No. 17,997.

Earl T. Carroll *v.* Sylvia P. Carroll.
(311 P. [2d] 709)

Decided May 27, 1957.

Mr. George V. Kempf, for plaintiff in error.

Messrs. Bryant, Petrie & Waldeck, for defendant in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the Court.

Earl T. Carroll, as plaintiff, filed a complaint for divorce on November 15, 1954, in the district court of

Ouray county, alleging that defendant was guilty of extreme and repeated acts of cruelty, consisting of mental suffering, and for a determination of property interests.

A bill of particulars required by motion therefor discloses the history of conduct by defendant which brought on the mental cruelty, and, in substance, was to the effect that defendant, Sylvia P. Carroll, refused to attend social functions or any public gatherings with plaintiff at Gunnison, Colorado, where he was engaged in the practice of law since 1942; that she refused to attend church services with him, or entertain in their home, and asserted final authority over their two children, who are now past legal age and married; that defendant consistently disagreed and argued with plaintiff and accused him of impairing her health with excessive work, and complained of his low earnings; that defendant refused to keep a clean and orderly house and required him to sleep in a separate room after 1945, and all sexual relations ceased because of her attitude, all of which caused physical and nervous distress and humiliation.

Defendant answered, denying the cruelty and made claim of absolute ownership of certain real estate standing in her name and asked that the complaint be dismissed.

While defendant laid much stress upon her physical disabilities as reason for not meeting the standards she claimed plaintiff required, she, however, was able to carry on her work as superintendent of schools without any difficulty on account of her health; that she accumulated twelve quarters of credit toward a master's degree in college, and she freely stated that she was hungry for cultural things and had a scholarly mind and wanted to live some place like Denver, where people were of her mental caliber. She said that she and plaintiff stopped talking to each other; that while plaintiff offered to have household help in their home, she would

not have the type of help that was available; that her husband was a veteran of World War I, nevertheless, she would not permit her daughter to attend college at Gunnison because there were boys there returning from the service; that she did not believe that ex-service men and WACs were suitable associates for her children; and that she stated positively that she does not want to be divorced.

Apparently the early part of the existence of this thirty-year marriage was reasonably agreeable, and it is revealed that some struggles were encountered in order to permit plaintiff to obtain his legal education; and that defendant taught school some of this time. The two children were born before plaintiff graduated; that after graduating, it seems that he followed a more or less itinerant course in the practice of his profession, of course, with all due credit, always trying to better his position. The parties have not lived together for a number of years, plaintiff claiming that he endured the marriage relation for a long time on account of the children; however, it can be gleaned from the evidence in the case, that defendant so rocked the connubial boat that plaintiff could no longer successfully steer it in the troubled domestic sea. As finally presented to the court, we have a marriage in name only, and not in fact.

The case was tried to the court in July of 1955, resulting in a finding and judgment for defendant and denial of divorce to plaintiff. The trial court in its findings expressed the thought that a difference in the ages of the parties contributed to their misunderstandings, plaintiff being fifty-seven years of age and defendant wife sixty-one years old at the time of the trial; further, that their married life had been a series of misunderstandings, many of which were occasioned and brought on by physical debilities of both parties; found that there seemed to be no studied attempt on the part of either to do the things of which complaint was made, and that it was simply a case where the theories and ideas of the

two just didn't coincide; and finally, determined that plaintiff had not established the necessary elements of the charge of mental cruelty. Motion for new trial was filed and denied, and plaintiff seeks reversal of the judgment on the principal ground that the judgment of the trial court was based upon a theory that plaintiff must establish a studied attempt, design, recklessness or wilfulness on the part of defendant to inflict cruelty upon plaintiff; and finally, that the preponderance of the evidence established such cruelty on the part of defendant.

We are in respectful disagreement with the trial court in its findings to the effect that the real difficulty between these parties was incompatibility, and the facts related were not sufficient to provide plaintiff a ground for divorce. So far as peace of mind, happiness and good health is concerned, mental cruelty may be the most devastating type of cruelty. As was said in an earlier case, it is a refined cruelty which is sharper than the knife and more brutal than the fist. *Williams v. Williams*, 1 Colo. App. 284, 28 Pac. 726. Married persons should be responsible to their spouses for the natural consequences of their words and actions, and if the conduct of defendant in this case was such as to cause disturbances with plaintiff's ability to carry on his chosen profession, and in addition thereto, bring about an impairment of health and rob him of his peace of mind, then it is something more than mere incompatibility. In some instances, it might be difficult to pinpoint mental cruelty and inferences may be allowed. Scrutiny of defendant's testimony discloses a clear inference that she felt herself superior in many ways to plaintiff, and that her environment was below her mental caliber. She admitted that she understood that plaintiff's nature was unusually sociable and responsive, and this leads to the inference that he is of a sensitive nature, and this should be a strong factor in determining whether there has been cruelty within the meaning of

our divorce statute. This does not create a dual standard, that is, one standard for the cultured and refined, and another for the unrefined. While the state and society is always an interested party in the maintenance of the marriage contract, it is not so exacting as to insist that the marriage relation in all events should continue, or that a home be maintained under circumstances that are more detrimental to society than a divorce. We believe the judgment of the trial court in this case should be in consonance with the views herein expressed and for that reason, the judgment is reversed.

MR. JUSTICE SUTTON not participating.